IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

QUINN GUDGER,
Inmate #079173
     Plaintiff,

vs.                                               Case No.: 3:16cv98/RV/EMT

Sergeant C. PUGH, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Plaintiff's second amended civil rights complaint under 42 U.S.C. §1983 (ECF No. 19),  Leave to proceed in forma pauperis has been granted (ECF No. 8).  Upon review of the Second Amended Complaint, the court concludes that facts set forth by Plaintiff fail to state a claim for relief that is plausible on its face.  Dismissal of this action is therefore warranted.

LEGAL STANDARDS OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss this case if satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The language in this subsection "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and thus

dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).  The pleader is not entitled to relief "where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> . . . a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted). Upon review of the complaint, the court concludes that facts set forth by Plaintiff fail to state a claim for relief that is plausible on its face. Dismissal of this action is therefore warranted.

REVIEW

Plaintiff, an inmate at the Florida State Prison but incarcerated at Santa Rosa Correctional Institution during the times relevant to the complaint, alleges that on January 9, 2016, he was in his cell and "had a hold of the wall & chain outside [his] cell door," apparently holding onto these objects from inside his cell through the food tray flap door (ECF No. 19 at 7). Defendant Sergeant C. Pugh told him to "let it go," to which Plaintiff responded that he wanted to see "the captain" (*id.*). Plaintiff does not explain why he was holding onto the wall and chain, nor why he refused to let go when told to do so, nor why he stated that he wanted to see the captain. When Plaintiff refuse to let go, Defendant Pugh then allegedly snatched the chain from Plaintiff's hand, "ripping open" his right thumb in the process (*id.*). Alleging that he received no attention for his bleeding thumb until Defendant Captain M. Burch arrived an hour and a quarter later, Plaintiff suggests that Defendants were trying to cover up the incident. He also states that Defendant Burch did not collect any evidence or take any pictures of his injured hand and that Defendant M. Stokes failed to make a report of the use of force (*id.* at 7–8). Disciplinary Reports ("DR's") were filed against Plaintiff regarding the incident, however, which Plaintiff asserts were false or bogus. Finally, Plaintiff suggests that the use-of-force incident was retaliatory because

Defendant Pugh had stated once before that he would "get" Plaintiff "some kind of way" for writing prison grievances (*id.* at 7).

Plaintiff thereby claims a violation of his Eighth Amendment rights based on Defendant Pugh's use of excessive force upon him. Plaintiff also claims constitutional violations based on his claim that Defendants did not properly investigate the use of force and that false DR's were levied against him. Last, Plaintiff claims Defendant Pugh's actions were taken in retaliation against him for filing prison grievances.

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a

variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson v. McMillian, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Importantly, unless the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives, dismissal is warranted. Whitley, 475 U.S. at 322. An Eighth Amendment claim requires more than negligence, even gross negligence. Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

In addition to the "unnecessary and wanton infliction of pain" standard, referred to as the "subjective component" of the excessive force standard, there exists an

"objective component" that determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). In situations involving allegations of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." Hudson, 503 U.S. at 9. However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (quotation omitted). "[Excluded] from constitutional recognition [are] de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, 503 U.S. at 9–10 (quotation marks and citation omitted); Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity."). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates no or merely minor medical treatment is not a constitutional violation, even where the prisoner was restrained and no further force was necessary. *See, e.g.*, Jones v. City of Dothan, 121 F.3d 1456, 1460–61 (11th Cir. 1997); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the

absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal.  Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).  In Hudson in particular, the Supreme Court held that Hudson's injuries, which included bruises, swelling, loosened teeth, and a cracked dental plate, were not de minimis for Eighth Amendment purposes. Hudson, 503 U.S. at 10.

Plaintiff's complaint does not meet either prong of the excessive force standard. Regarding the first prong, Plaintiff's allegations do not amount to more than a simple dispute over what is a necessary use of force.  Plaintiff does not deny that he refused to comply with the order to remove his hands from the "chain and wall" that he was grasping, and so he does not contest that some measure of force was legitimated in order to restore institutional discipline and order.  Other than the circumstances of the incident, Plaintiff ascribes no motive to Defendant's action other than his conclusory allegation that Defendant Pugh, at an indeterminate time preceding the incident in question, expressed a retaliatory motive (the terms of which the court will address *infra*).  Thus, the use of force which caused injury to Plaintiff's thumb was simply inadvertent and a matter of negligence, which is not actionable for an Eighth Amendment claim.

Nor does Plaintiff meet the second, or objective, prong of the standard. He complains that his thumb was bleeding after the incident, but beyond the fact that his injury necessitated a visit to the nurse, there is no indication that Plaintiff suffered any significant or lasting injury. Accordingly, the court finds Plaintiff's injury to be de minimis and therefore not of a constitutional dimension.[1]

Plaintiff also claims constitutional violations based on his claim that Defendants did not properly investigate the use of force and that false DR's were levied against him. The filing of false disciplinary charges against an inmate does not alone amount to a constitutional violation. Rodgers v. Singletary, 142 F.3d 1252 (11th Cir. 1998); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951–53 (2d Cir. 1986). In Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), the Supreme Court set forth the minimum constitutional due process requirements for which should be accorded prisoners in disciplinary proceedings: (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the

---

[1] In this regard and in other contexts of this Report, it should be noted that Plaintiff was earlier ordered to amend his complaint under the court's Section 1915 review (*see* ECF No. 12). Many of the legal standards discussed herein were presented to Plaintiff in the court's order to amend, yet Plaintiff, despite having the opportunity to particularize his claim to address the deficiencies that were pointed out to him, failed to do so. Accordingly, court fairly concludes that Plaintiff is unable to allege injury beyond what he has already alleged.

Case No.: 3:16cv98/RV/EMT

disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 563–66. The Court also indicated a reluctance to review the judgments of prison administrators and acknowledged that prison disciplinary proceedings do not require the "full panoply of rights" due a defendant in a criminal proceeding. *Id.* at 556. Consequently, there is no constitutional right of cross-examination and confrontation of witnesses in a prison disciplinary hearing. *Id.* at 567–68; Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994). An inmate's right to attend a prison disciplinary hearing is also one of the essential due process protections afforded by the Fourteenth Amendment and recognized in Wolff. *See* Battle v. Barton, 970 F.2d 799, 782 (11th Cir. 1992). However, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979).

Additionally, in Superintendent v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), the Supreme Court held that a decision of a prison disciplinary board need only be supported by "some evidence." 472 U.S. at 455. "Ascertaining

whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board." *Id*. at 455–56 (emphasis added).

Moreover, due process protections do not attach to all disciplinary proceedings. In cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is temporary placement in disciplinary confinement, due process protections do not attach. *See* <u>Sandin v. Conner</u>, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995). This is so because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 485–86; *see also* <u>Rodgers v. Singletary</u>, 142 F.3d 1252, 1253 (11th Cir. 1998) (placement in administrative confinement for two months did not constitute deprivation of constitutionally protected liberty interest as defined in <u>Sandin</u>). Under <u>Sandin</u>, unless a prison restraint or discipline imposes an atypical hardship on the inmate in relation to "the ordinary incidents of prison life," there exists no sufficient liberty interest to warrant due process protections. *Id.* at 487.

Here, Plaintiff complains against the validity of the disciplinary findings against him, but this "false DR's" claim is not constitutionally actionable. Plaintiff also complains that photographs were not taken of his thumb, but even if this were probative of the due process issue, it is clear that such a photograph would not serve to exonerate the charges against him; they would only be relevant to the separate matter of Defendant Pugh's use of force against him, not to disciplinary proceedings that addressed *Plaintiff's* actions. Last, Plaintiff describes nothing in the way of the disciplinary outcome to suggest that the punishments imposed by the DR's constituted anything other than the normal incidents of prison life that Sandin excluded from constitutional review. Accordingly, the court finds that Plaintiff's due process claims regarding his DR's is not of constitutional proportion and therefore subject to dismissal.

Last, as for Plaintiff's claim of retaliation, the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003 (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). "A prisoner can establish retaliation by demonstrating that the

prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow, 320 F.3d at 1248 (internal quotation and citation omitted). However, broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987). The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were in retaliation for filing grievances or lawsuits or otherwise engaging in First Amendment activity. Wright, 795 F.2d at 968. He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive and proceed into discovery. Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). Plaintiff must come forward with more than "general attacks" on Defendants' motivations and must produce "affirmative evidence" of retaliation. Crawford-El v. Britton, 523 U.S. 574,

118 S. Ct. 1584, 1598, 140 L. Ed. 2d 750 (1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)). Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v. Conner, 115 S. Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. . . ." Crawford-El, 118 S. Ct. at 1596–97; Harris v. Ostrout, 65 F.3d 912, 916–17 (11th Cir. 1995); *see also* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

Here, Plaintiff attempts to build a claim of retaliation from one alleged statement, made by Defendant Pugh at some vague, antecedent time, that Pugh would get him "some kind of way" for writing prison grievances. No manner or mode of retaliation was expressed. Plaintiff does not relate the content of those grievances,

Case No.: 3:16cv98/RV/EMT

whether the grievances involved Pugh, or how they might have caused a retaliatory animus. Moreover, there is no indication whatsoever that during the use-of-force incident at the cell, which the court has already determined to have been at best the product of negligence, was in any way motivated by the alleged retaliatory animus. Accordingly, the court finds that no causal link is made between Pugh's use of force and any retaliatory motive.

As a final matter, Plaintiff claims that Defendants violated Florida Statutes, Section 838.022 through their actions in this case. Section 838.022 is a criminal statute, however, which Plaintiff is not entitled to enforce. Criminal statutes generally do not provide a vehicle for a private cause of action. Chen ex rel. V.D. v. Lester, 364 F. App'x 531, 536 (11th Cir. 2010) (citing Love v. Delta Air Lines, 310 F.3d 1347, 1352–53 (11th Cir. 2002). As a private citizen, Plaintiff "has no judicially cognizable interest" in the prosecution of another. Otero v. United States Attorney Gen., 832 F.2d 141 (11th Cir. 1987) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973)); *see also* Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (a private citizen has no authority to initiate a criminal prosecution); Higgins v. Neal, 52 F.3d 337 (10th Cir. 1995); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have

other citizens, including state actors, criminally prosecuted). Similarly, Plaintiff also claims violation of Florida Statutes, Section 944.35. The purpose of this section is improve the effectiveness of the Florida correctional system, to allow for the proper training of correctional personnel, and to provide for disciplinary or criminal consequences against officers who use unauthorized force on inmates. *See* Heilman v. State, 135 So. 3d 513, 515-16 (Fla. 5th DCA 2014). As such, there is no authorization under the statute for a private cause of action in damages such as the instant case.[2]

Accordingly, it respectfully **RECOMMENDED**:

---

[2] The court notes that, even if this ancillary cause of action were viable, it would be as a state cause of action, recoverable only under state law. For federal question to exist in this court under Section 1331 of Title 28, a federal question must be presented or apparent on the face of the complaint. Hill v. BellSouth Telecomm., Inc., 364 F.3d 1308, 1314 (11th Cir. 2004) (citing Smith v. GTE Corp., 236 F.3d 1292, 1310 (11th Cir. 2001)). While a state law claim might ordinarily be heard under the court's supplemental jurisdiction, 28 U.S.C. § 1367, it is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over state claims. *See* Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir.1997). Thus, court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. Baggett, 117 F.3d at 1353 (citing Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994); Exec. Software N. Am. v. United States Dist. Court, 15 F.3d 1484, 1493 (9th Cir. 1994); New England Co. v. Bank of Gwinnett Cnty., 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); Fallin v. Mindis Metals, Inc., 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Because all of Plaintiff's federal claims are subject to dismissal, even if his state law claims could survive, they should also be dismissed from federal court. The state court is best equipped to research and rule on matters of state law, and principles of comity provide that it be allowed to do so, especially where, as here, there is no apparent private cause of action to be had.

Case No.: 3:16cv98/RV/EMT

1.	That the complaint be **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

2.	That this dismissal should be deemed a "strike" for purposes of 28 U.S.C. § 1915(g).

At Pensacola, Florida, this 19<u>th</u> day of June 2018.

>	/s/ *Elizabeth M. Timothy*
>	**ELIZABETH M. TIMOTHY**
>	**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**